# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

In re:

**Anatoly Gershengorin and
Isabella Gershengorin,**

Debtors.

Chapter 11

Bankruptcy No. 24-15724

Hon. Daniel R. Fine

## DEBTORS' PLAN OF REORGANIZATION,
## DATED APRIL 20, 2026

Justin R. Storer (ARDC 6293889)
**FACTORLAW**
105 W. Madison, Suite 2300
Chicago, IL 60602
Tel:      (312) 373-7226
Fax:      (847) 574-8233
Email:  jstorer@wfactorlaw.com
Counsel for Anatoly Gershengorin and
    Isabella Gershengorin, Debtors and
    Debtors-in-Possession

# ARTICLE 1. BACKGROUND

### 1.1. **Description and history of the Debtors' business.**

Anatoly Gershengorin and Isabella Gershengorin ("*the Debtors*") are senior citizens, in good health, who receive Social Security income and work for their son's company, Real Restoration Group, Inc. Over the years, they had amassed a small measure of debt, but they were brought into bankruptcy due to one big one:

In 1999, the Debtors had purchased an income property, at 8105 Skokie Boulevard, Skokie, Illinois. On or about November 22, 2010, American Chartered Bank, that property's mortgagee, filed a complaint to foreclose its lien, commencing case 2010CH-50004 at the Circuit Court of Cook County. On or about March 24, 2011, American Chartered Bank filed a separate confession of judgment against the Debtors, seeking judgment by confession on the note backstopping the Debtor's liability on the mortgage, commencing case 2011-L-050328 at the Circuit Court of Cook County. Very shortly thereafter, judgment was entered in favor of American Chartered Bank in that action. American Chartered Bank obtained a judgment of foreclosure and sale in the foreclosure case, sold the Skokie Boulevard property to itself, and credited the sales proceeds against the amount owed by the Debtors on the money judgment.

American Chartered Bank assigned the judgment to SMS Financial Services, LLC, which undertook collection activity, including the recordation of the judgment, intending to create a lien on the Debtors' home at Pine Tree Road.

To gain control of the situation, the Debtors filed their chapter 13 case on October 21, 2024 ("*the Petition Date*"). In the course of the chapter 13, the Debtors obtained ascertainment from the Bankruptcy Court that SMS's putative lien was not a valid lien on their home. As the Debtors were now in excess of the "general unsecured" debt limit for chapter 13 bankruptcy cases, the Debtors converted their case to one under subchapter V of chapter 11. The Debtors continue to operate their business and manage their affairs as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code. Janice Seyedin has been appointed as Subchapter V Trustee.

### 1.2. **Liquidation analysis.**

To confirm the plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a Chapter 7 liquidation.

The Debtors believe that a chapter 7 Trustee would distribute about **$241,734.71** to prepetition claims, net of costs of administration; assuredly less, in fact, asthat figure provides for no capital gains or other tax debt owed by the estate, and only estimates the chapter 7 Trustee's professionals' fees at $10,000.00. But be that as it may, as they are committing postpetition income, the Debtors believe that this Plan provides for prepetition claims to receive more than their estimate, to wit, **$243,000.00.**

A detailed liquidation analysis is attached hereto as <u>Exhibit A</u>.

1.3. **<u>Ability to make future plan payments and operate without further reorganization.</u>**

The plan proponent must show that they will have enough cash over the plan's life to make the required payments and operate their business. The Debtors' plan contemplates repaying allowed claims from their projected disposable income over the next five years.

The Debtor's schedules I and J are attached hereto, at <u>Exhibit B</u>, as a financial projection.

The Debtor's financial projections show that over the next five years, the Debtors will have projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) of approximately $137,000, and the Debtor's plan provides to disburse payments in excess of that figure; materially, the Debtors' plan is partially-funded by their Social Security income, which the Debtors assert is properly excluded from a debtor's calculation of disposable income pursuant to section 407(a) of the Social Security Act.

The final Plan payment is expected to be paid on or about June 30, 2032. The Debtors expect to perform fully in about 60 months after their Plan is confirmed.

**You should consult with your accountant or other financial advisor if you have any questions about these projections.**

## ARTICLE 2. SUMMARY.

This plan of reorganization (the "Plan") under Chapter 11 of the Bankruptcy Code (the "Code") proposes to pay the Debtor's creditors from their income.

This Plan provides to classify certain secured creditors, and for the allowance of one class of general unsecured claims.

Non-priority unsecured creditors holding allowed claims will receive distributions, which the Debtors anticipate to be valued at about 26 cents on the dollar. This Plan also provides for the payment of administrative and priority claims.

All creditors should refer to Articles 3, 4, and 5 of this Plan for information regarding the precise treatment of their claim.

***Your rights may be affected. You should read these papers carefully and discuss them with your attorney if you have one. If you do not have an attorney, you may wish to consult one.***

## ARTICLE 3. DEFINITIONS AND RULES OF CONSTRUCTION.

3.1. Definitions. The capitalized terms used herein have the respective meanings set forth below. Any term used but not defined herein has the meaning ascribed to that term, if any, in the Code.

3.1.1. "Allowed" means an administrative expense claim, a priority tax claim, an other priority claim, a Fee Claim, a secured claim, an unsecured claim, or an interest, or any portion thereof, that: (a) has been allowed by a final non-appealable order that has not been reconsidered as of the Effective Date; (b) was listed in the Schedules as neither disputed, nor contingent, nor unliquidated, has not been superseded by a timely Proof of Claim or Interest, and for which no objection has been filed by any party in interest as of the Effective Date; or (c) is set forth in a timely filed Proof of Claim or Interest in a liquidated amount, as to which no objection has been timely filed.

3.1.2. "Assets" means all real, personal, and intangible property and rights of the Debtors and their Estates as of the Effective Date, and include, without limitation, all of the Debtor's real property and improvements and fixtures thereon, trademarks, trade secrets, cash, accounts receivable, goods, equipment, inventory, chattel paper, documents, instruments, money, fixtures, contract rights, general intangibles, insurance proceeds, tax refunds, causes of action, claims and rights of any kind, wherever situated, together with the proceeds thereof.

3.1.3. "Ballot" means the ballot accompanying the Plan upon which creditors shall have indicated their acceptance or rejection of the Plan and have elected or consented to certain treatment under the Plan.

3.1.4. "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as heretofore and hereafter amended.

3.1.5. "Bar Date" means a date to be set by later Court order, which is the deadline for filing Proofs of claim against the Debtors' Estate. Certain creditors may be subject to different bar dates; section 8.1 details efforts undertaken to that end, as of the filing date of this Plan.

3.1.6. "Case" means the bankruptcy case commenced by the Debtors in the Court on the Petition Date, assigned Case No. 24-15724.

3.1.7. "Cash" means (i) currency, a certified check, cashier's check or a wire transfer of good funds from any source or (ii) a check from a Debtor or Reorganized Debtor.

3.1.8. "Class" means a class of claims or interests described in Article 4 of the Plan.

3.1.9. "Code" means title 11 of the United States Code, 11 U.S.C. § 101 *et seq*.

3.1.10. "Confirmation Order" means the order entered by the Court confirming the Plan.

3.1.11. "Confirmation Date" means the date the Confirmation Order is entered by the court, without respect to the date that entered order is "filed" on the Court's electronic docket.

3.1.12. "Court" means the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, or such other court having jurisdiction over the Case.

3.1.13. "Effective Date" means the date that is 30 days after the Confirmation Order becomes a Final Order.

3.1.14. "Estate" means the bankruptcy estate created at the time of the Debtor's bankruptcy filing, containing property of the Debtors pursuant to §§ 541 and 1115 of the Code.

3.1.15. "Fee Claim" means a Claim against the Debtors by a professional pursuant to §§ 327, 328, 330, 331, 503(b), or 1103 of the Code or otherwise relating to services performed and expenses incurred after the Petition Date and prior to and including the Effective Date.

3.1.16. "Final Order" means either: (a) an order as to which the time to appeal, petition for writ of certiorari, or move for re-argument, rehearing,

reconsideration, new trial, or to alter or amend findings or judgment has expired and as to which no appeal, petition for writ of certiorari or other proceedings in which a party is seeking re-argument, rehearing, reconsideration, new trial, or to alter or amend findings or judgment shall then be pending or (b) if an appeal, writ of certiorari, re-argument, rehearing, reconsideration, new trial, or motion to alter or amend findings or judgment thereof has been sought, an order that has been affirmed by the highest court to which such order was appealed, or certiorari has been denied or from which re-argument, rehearing, reconsideration, new trial, or motion to alter or amend findings or judgment was sought, and for which the time to take any further appeal, petition for writ of certiorari or move for re-argument, rehearing, reconsideration, new trial, or to alter or amend findings or judgment shall have expired, provided, however, that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Rule 9024 of the Federal Rules of Bankruptcy Procedure may be filed with respect to such order.

3.1.17. "First Payment Date" means the date that is 30 days after the Confirmation Order becomes a Final Order.

3.1.18. "Holder" means a Person that is the beneficial owner of a claim or interest. For purposes of voting to accept or reject this Plan, a person must be a Holder as of the Voting Record Date. For purposes of a distribution, a Person must be a Holder as of the Effective Date.

3.1.19. "Impaired" means, with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

3.1.20. "Law Firm" means The Law Office of William J. Factor, Ltd.

3.1.21. "Lost Creditor" means the Holder of an allowed claim whose distribution has been returned to a Reorganized Debtor as undeliverable and who fails to notify a Reorganized Debtor in writing of a current address within 90 days after the date such distribution was first mailed. The Reorganized Debtor will take commercially reasonable measures to locate a creditor whose distribution has been returned as undeliverable.

3.1.22. "Petition Date" means, as noted above, October 21, 2024.

3.1.23. "Plan" means this Plan of Reorganization, either in its present form or as it may hereafter be altered, amended, or modified from time to time.

3.1.24. "Proof of Claim" means a statement in writing of a Claim on, or consistent with, the Court's Official Form 10 proof of claim form against one or both of the Debtors, filed with the Court.

3.1.25. "Reorganized Debtor" (or "Debtors") means a Debtor, or the Debtors, after the Effective Date of the Plan.

3.1.26. "Schedules" means, collectively, the schedules of assets and liabilities and the Statement of Financial Affairs filed by the Debtors as required by § 521 of the Code and Bankruptcy Rule 1007, as such schedules and statements may be supplemented or amended.

3.1.27. "Secured Claim" means (a) a Claim that is secured by a Lien on a property in which the Estate has an interest, which Lien is valid, perfected and enforceable under applicable law or by reason of a Final Order, or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's interest in an Estate's interest in such property.

3.1.28. "Subchapter V Trustee" means Janice Seyedin in her capacity as the appointed Subchapter V Trustee in the Case.

3.1.29. "Unsecured Claim" means any Claim against either or both Debtors other than an Administrative Claim, a Priority Claim, a Secured Claim, or an Equity Interest.

3.1.30. "Voting Record Date" means [DATE], the date on which the Court authorized solicitation of acceptances of this Plan.

3.2. Rules of construction. The rules of construction contained in § 102 of the Code apply to the construction of the Plan. Whenever the context requires, words denoting the singular number include the plural number and *vice versa*, and words denoting one gender include the other gender and *vice versa*. All exhibits and schedules attached to this Plan are incorporated herein.

## ARTICLE 4. CLASSIFICATION OF CLAIMS AND INTERESTS.

4.1. Classification of Claims and Interests.

4.1.1. Class 1a. Secured claim of Provident Funding Associates, the mortgagee on the Debtors' home.

4.1.2. Class 1b. Secured claim of Genesis Finance, securing an automobile that the Debtors use.

4.1.3. Class 2. Secured claim of JPMorgan Chase Bank, N.A., securing an automobile that the Debtors propose to surrender and in which that creditor had, prior to the order converting the Case to chapter 11, had obtained stay relief.

4.1.4. Class 3. All unsecured claims of creditors, which may include a deficiency subsequent to the Class 2 creditor's liquidation of its collateral.

4.2. ***Empty classes.*** To the extent there are no claims or creditors in a particular class, the Debtors reserve the right without any further notice to eliminate such class solely for purposes of determining whether the Plan meets the requirements for confirmation under the Code.

4.3. ***Objectionable claims.*** The Debtors scheduled a priority tax claim of the Internal Revenue Service, and a "notice only" claim of the Illinois Department of Revenue. Neither filed a claim while the Case was in chapter 13. Upon further investigation, the Debtors believe that any potential claim of the IRS's for prebankruptcy debt may be time-barred under the Internal Revenue Code. To obtain prompt ascertainment that no debt is owed, the Debtors will object to these scheduled claims.

## ARTICLE 5. TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, PRIORITY TAX CLAIMS, AND QUARTERLY AND COURT FEES.

5.1. ***Unclassified claims.*** Under § 1123(a)(1), administrative expense claims and priority tax claims are not in classes. The Debtors anticipate no such debt being owed.

5.2. ***Administrative expense claims.*** Each Holder of an administrative expense claim allowed under § 503 of the Code will be paid as follows.

5.2.1. All administrative expense claims that have been allowed, including Fee Claims, will be paid in monthly installments, commencing within 30 days after the order allowing such claim is allowed by a final order. Notwithstanding the foregoing, any administrative expense claim in favor of the Subchapter V Trustee shall be paid in full within 30 days after the later of the Effective Date or the date such claim is Allowed. The Subchapter V Trustee has petitioned for a retainer, and in the event that any claim in favor of the trustee in excess of that retainer is allowed, it will be paid within 30 days.

5.2.2. Deadline for filing administrative expense claims. Except as otherwise provided by an order entered in the Case or by this Plan, and except for

administrative expense claims incurred in the ordinary course, the deadline for any entity to assert an administrative expense claim is 30 days after the Effective Date of this Plan. Administrative expense claims that are required to be filed within that period and are not so filed will be deemed untimely and not entitled to a distribution or treatment under the Plan.

5.2.3. Allowance of administrative expense claims. An administrative expense claim other than a Fee Claim that has been timely and properly filed becomes an allowed administrative expense claim only if 60 days have passed from the Effective Date, and then only to the extent no objection has been filed thereto. If an objection is filed by the 60th day after the Effective Date, such administrative expense claim becomes an allowed administrative expense claim only to the extent allowed by a final order.

## ARTICLE 6. TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN.

6.1. The treatment of claims and interests under this Plan is summarized in the following table.

| Class | Impairment | Treatment |
|---|---|---|
| Class 1a: Secured claim of Provident Funding Associates | Not impaired | The Reorganized Debtors will continue making direct payment and will remain in compliance with the note and mortgage, without seeking to alter their terms |
| Class 1b: Secured claim of Genesis Finance | Not impaired | The Reorganized Debtors or Real Restoration Group, Inc., will continue making direct payment and will remain in compliance with the underlying retail installment agreement, without seeking to alter its terms |

| Class 2: Secured claim of JPMorgan Chase Bank, N.A. | Impaired | The Reorganized Debtors will surrender this lienholder's collateral; any deficiency owed after its liquidation will be paid pro rata with class 3 creditors |
| Class 3: All general unsecured creditors | Impaired | The Reorganized Debtors will disburse monthly payments to all class 3 creditors, totaling $4,050.00 per month |

6.2. Treatment of classes.

6.2.1. *Class 1a and 1b:* The Reorganized Debtors will not seek to alter their nonbankruptcy obligations as to Provident Funding Associates or Genesis Finance.

6.2.2. *Class 2:* JPMorgan Chase Bank, N.A., is the lienholder on a certain 2021 Dodge Ram 3500, with VIN 3C63RRGL4MG622505. Prior to the Conversion Date, that creditor obtained stay relief on the vehicle. The Debtors reiterate their intent to surrender that vehicle, and to permit them, in compliance with state law, to liquidate that vehicle and be allowed a general unsecured claim for the balance owed. If necessary, the Reorganized Debtors will seek an order estimating their general unsecured claim for purposes of distribution no less than 30 days after the Confirmation Date.

6.2.3. *Class 3:* The Reorganized Debtors will pay Holders of allowed general unsecured claims pro rata, with those payments totaling $4,050.00 per month.

6.3. Agreement to less favorable treatment. Any Holder of an allowed claim may agree to less favorable treatment than is provided for that Holder in this Plan. That less favorable treatment will then supersede the Plan's treatment of the Holder described above. The obligations of a Debtor or Reorganized Debtor under this Plan may be prepaid in full or in part without penalty.

## ARTICLE 7. FEASIBILITY

The Court must find that Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of either Debtor or any successor to either Debtor unless such liquidation or reorganization is proposed in the Plan.

The Debtors believe that they will be able to generate sufficient cash flow to fund the proposed distributions identified in the Plan.

## ARTICLE 8. ALLOWANCE AND DISALLOWANCE OF CLAIMS.

8.1. Bar Dates.

8.1.1. Unsecured Claims. The Debtors have filed a motion to set a bar date for the filing of claims; the Debtors' proposed order provides that claims filed during the pendency of the chapter 13 bankruptcy may be amended, but that no amendment is necessary for their claim to be allowed as filed.

8.1.2. Administrative Expense Claims. The deadline for the Holders of administrative expense claims to file a request for payment thereupon, or other proof thereof, is 30 days after the Effective Date.

8.1.3. Objection deadline. Subject to any prior orders entered in the case, the Debtors shall have 30 days after the Effective Date or after a proof of claim has been filed, or after a request for administrative expense claim has been filed, whichever is later, to file an objection to any claim or request. Each deadline may be extended upon motion to the Court. A failure by the Debtors to examine or object to any claim for purposes of voting shall not be deemed a waiver of the Debtor's right to re-examine or object to the claim, in whole or in part, for any other purpose.

8.2. Resolution of Disputed Claims. To the extent either Debtor has commenced a proceeding objecting to a claim or request for administrative expense, that Reorganized Debtor shall, upon the Effective Date, automatically and with no further action required supplant the Debtor as the party pursuing such objection and shall be vested with all of the rights and obligations of the Debtor in such proceeding.

8.3. No payments. Notwithstanding any other provisions of this Plan, no payments or distributions shall be made on account of any disputed claim or disputed request for administrative expense until and unless such disputed claim or disputed request becomes an allowed claim or allowed request, and then only to the extent that it becomes allowed. No distributions shall be made to any Holder of an

allowed claim in a particular Class unless and until all objections to claims in that Class have been resolved by a final non-appealable order.

## ARTICLE 9. PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES.

9.1. Rejection process. As of the Effective Date, any and all executory contracts and unexpired leases are deemed rejected by the Debtors unless such contract or lease is expressly assumed on or before the Effective Date pursuant to a motion filed prior to the Effective Date.

9.2. Rejection claims. If an executory contract or unexpired lease is rejected as of the Effective Date pursuant to the Plan, the non-Debtor party to the executory contract or lease may file a Proof of Claim for damages by reason of the rejection. Any Proof of Claim with respect to claims under an executory contract or unexpired lease that has been rejected must be filed with the Court within 30 days after the date of the rejection. A claim under an executory contract or unexpired lease which has been rejected shall constitute a Class 3 Claim, as limited by the provisions of sections 502(b)(6) and 502(b)(7) of the Code and state law mitigation requirements. Nothing contained herein shall be deemed an admission that such rejection gives rise to, or results in, a claim, or deemed a waiver by the Reorganized Debtors of any objections to such claims if asserted.

## ARTICLE 10. MEANS FOR IMPLEMENTATION OF THE PLAN.

10.1.   Payments. Whether the Plan is confirmed under § 1191(a) or § 1191(b), payments to Creditors, Holders, and any/all other parties provided for in the Plan will be made by the Reorganized Debtors.

10.2.   Authorization. From and after the Effective Date, the Reorganized Debtors shall take all steps and execute all documents necessary to effectuate the Plan.

10.3.   Satisfaction of Claims. Upon the completion of the payments required by this Plan, the Reorganized Debtors shall have no further obligations under this Plan to any Holder of any Claims. At such time, the Reorganized Debtors may file, but are not required to file, a notice with the Court stating that one or more claims have been fully satisfied in accordance with the Plan and such notice shall be deemed to be a satisfaction of judgment.

## ARTICLE 11. DELIVERY OF DISTRIBUTIONS.

11.1.   Means of Cash payment. Cash payments made pursuant to this Plan will be in U.S. funds by the means agreed to by the Reorganized Debtors and payee or, in the absence of an agreement, by check or other commercially reasonable means in the Reorganized Debtor's sole discretion.

11.2.   Fractional cents. Any other provision of this Plan to the contrary notwithstanding, no payments of fractions of cents will be made. Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment may reflect a rounding of such fraction to the nearest whole cent (up or down).

11.3.   Delivery of Distributions. Except as provided below for undeliverable distributions, distributions to Holders of allowed claims and allowed requests for administrative expenses shall be distributed by U.S. mail as follows: (i) at the addresses set forth on the Proof of Claim or request filed by such Holders; (ii) at the addresses set forth in any written notices of address changes filed with the Court or delivered to the Reorganized Debtors after the date of any related Proof of Claim; or (iii) at the address reflected on the Debtors' schedules or the Reorganized Debtor's books and records, if no Proof of Claim is filed and no notice of a change of address has been filed or delivered to the Reorganized Debtor.

11.4.   Distributions in complete satisfaction. The distributions and other treatments provided for each claim under this Plan are in complete satisfaction, discharge, and release of each such claim.

11.5.   Escheat. Holders of claims have 180 days from the check date to negotiate the distribution checks issued in satisfaction of their claims. Despite any reference to "single distribution" elsewhere herein, payment on such checks shall be stopped and the funds shall escheat to the Estate for distribution to the other Holders within such Holder's class under the Plan who have cashed their distribution checks.

11.6.   Changes of address. To be effective, any notice of change of address must (i) prior to the Effective Date, be filed with the Court, or (ii) following the Effective Date, be delivered to the Reorganized Debtor at the address set forth in the Plan.

11.7.   De minimis Distributions. No Cash payment of less than $5.00 will be made by the Reorganized Debtor to any Holder of an Allowed Claim.

11.8.   Undeliverable Distributions. The Reorganized Debtor shall hold onto all distributions that have been returned as undeliverable until such time as the

Holder entitled to such distribution becomes a Lost Creditor or such Holder has been located. The Reorganized Debtor will take commercially reasonable measures to locate a creditor whose distribution has been returned as undeliverable. If the Holder that is entitled to such distribution notifies the Reorganized Debtor in writing of a new address within 30 days after the applicable date of the distribution, the Reorganized Debtor will mail the distribution and any further distributions to the new address for such Holder. From time to time, though not less-frequently than every 12 months from the time any Holder becomes a Lost Creditor, the Debtor shall submit the aggregate value of a Lost Creditor's disbursements to the Clerk of the United States Bankruptcy Court for the Northern District of Illinois as unclaimed funds.

11.9.   Compliance with tax requirements. To the extent applicable, the Debtors and the Reorganized Debtors shall comply with all withholding and reporting requirements imposed by any governmental unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.

## ARTICLE 12. DISCHARGES AND RELEASES.

12.1.   No liability for solicitation or participation. As specified in § 1125(e) of the Code, persons that solicit acceptances or rejections of the Plan are not liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan.

12.2.   Binding effect of the Plan. Upon the Effective Date, the provisions of this Plan are binding on all persons to the fullest extent permitted under applicable law, expressly including, without limitation, all Holders of claims, and all Holders of administrative expense claims, other priority claims, or priority tax claims, and the successors and assigns of the foregoing, whether or not they accept this Plan or have filed a claim.

12.3.   Discharge. Confirmation of the Plan does not discharge any debt provided-for in the Plan until the and unless Court grants the Reorganized Debtors a discharge, upon application, after notice and hearing.

12.4.   Exculpation. The Reorganized Debtors and the Law Firm neither have nor will incur any liability to any person for any act taken or omitted to be taken in connection with or related to the administration of the case, the solicitation of votes on, or the negotiation, preparation, formulation, solicitation, dissemination, implementation, confirmation of the Plan, or any contract, instrument, release, or other agreement or document created or entered into, or any other act taken or omitted to be taken in connection with this case or the Plan.  Notwithstanding

anything to the contrary in this paragraph, the protections provided by this paragraph (a) are limited to actions occurring between the Petition Date and the Effective Date and (b) offer no protection for grossly negligent or fraudulent conduct.

12.5.   Injunction. Except as otherwise provided in the Plan or the Confirmation Order, all of the Debtor's Creditors and their respective successors and assigns, as well as any trustee subsequently appointed, is permanently enjoined, restrained and precluded, from asserting, commencing or continuing in any manner any action, encumbrance, lien, setoff, claim, or right of recoupment, against the Reorganized Debtors or any of their property, related to any Claim arising prior to the Effective Date, except to the extent as provided for in the Plan.

## ARTICLE 13. VOTING AND EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS.

13.1.   Impaired Classes to vote. Holders of allowed claims in Classes 2 and 3, as impaired classes of claims under the Plan, are entitled to vote to accept or reject this Plan. For purposes of voting to accept or reject this Plan, a person is a Holder as of the Voting Record Date. A Holder of an allowed claim as of the Voting Record Date may vote to accept or reject this Plan. A Holder of a claim as to which an objection has been filed that has not been temporarily allowed for purposes of voting on this Plan may not vote.

13.2.   Acceptance by Classes of Claims or Interests. A class of claims or interests has accepted this Plan if votes are cast to accept the Plan by at least two-thirds in amount and more than one-half in number of the allowed claims in the Class actually voting to accept or reject this Plan.

13.3.   Section 1191(b) non-consensual confirmation. To the extent necessary, the Debtors will request that the court confirm the Plan notwithstanding the requirements of § 1129(a)(8), (10), and (15) of the Code, because the Plan does not discriminate unfairly, and is fair and equitable with respect to the treatment of any dissenting Class of claims, in accordance with the requirements of § 1191(b) of the Code. The Debtors assert that this Plan provides for fair and equitable treatment of all Classes of claims.

## ARTICLE 14. CONDITIONS TO CONFIRMATION AND EFFECTIVENESS.

14.1.   Conditions to confirmation. The following are conditions precedent to confirmation of the Plan unless waived by the Debtor: (i) the confirmation order is in a form and substance reasonably acceptable to the Debtor; and (ii) the confirmation order provides for the transfer of the assets to the Reorganized

Debtors free and clear from any claims, except as provided in this Plan. Within five business days of the Court entering a confirmation order, the Debtors shall serve a copy of that order, specifically indicating the Effective Date, upon all creditors and parties in interest, and shall file a certificate of service relating thereto.

14.2.   Waiver of conditions. The conditions to the confirmation and consummation of this Plan and the occurrence of the Effective Date, as set forth in this Plan, may be waived in whole or in part by the Debtor.

### ARTICLE 15. RETENTION OF JURISDICTION.

15.1.   Jurisdiction. Until the Case is closed, the Court will retain jurisdiction as is legally permissible under applicable law, including under §§ 105(a) and 1142 of the Code, including that jurisdiction necessary to ensure that the purpose and intent of this Plan are carried out and to hear and determine all claims and interests and objections thereto that could have been brought before the entry of the confirmation order. The Court will retain jurisdiction to hear and determine all matters with respect to claims against and interests in the Debtors. Nothing contained in this Plan shall prevent the Reorganized Debtors from taking any action as may be necessary in the enforcement of any cause of action that may exist on behalf of the Debtors and that may not have been enforced or prosecuted by the Debtors.

15.2.   Examination of Claims and Interests. Following the date the Plan is confirmed, the Court will retain jurisdiction to decide disputes concerning the classification and allowance of any claim or interest and the re-examination of claims that have been allowed for the purposes of voting, and the determination of any objections as may be filed to claims. The failure by the Debtors to object to, or to examine, any claim for the purposes of voting will not be deemed a waiver of the Debtor's right or the right of the Reorganized Debtors to object to, or to re-examine, the claim in whole or in part.

15.3.   Determination of disputes. The Court will retain jurisdiction after the date the Plan is confirmed to determine all: (i) questions and disputes regarding title to the assets of the Debtor; (ii) disputes concerning the allowance of claims and interests; and (iii) all causes of action, controversies, disputes, or conflicts, whether or not subject to any pending action as of the date the Plan is confirmed, in which the Debtors or Reorganized Debtors seek to recover assets or otherwise pursue their rights pursuant to the provisions of the Code.

15.4.   Abstention. If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter

arising out of the reorganization case, including the matters set forth in this Plan, the Plan's retention of jurisdiction shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE 16. MISCELLANEOUS.

16.1.   Notices. All notices in connection with this Plan, including any notices concerning a change of address for a Holder of a claim or interest, should be delivered by overnight mail or United States certified mail, postage prepaid, return-receipt requested, addressed to the Debtor, prior to the Effective Date, or to the Reorganized Debtor, after the Effective Date, at the following addresses:

*To Reorganized Debtor[s]:*
Anatoly Gershengorin [and/or] Isabella Gershengorin
5 Pinetree Road
Northbrook, IL 60062

*With a copy to:*
Justin Storer
Law Office of William J. Factor, Ltd.
105 W. Madison St., Suite 2300
Chicago, IL 60602

16.2.   Asserting and curing defaults under the Plan. If the Debtors or Reorganized Debtors default under the provisions of this Plan, any creditor or party in interest wishing to assert a default shall provide the Reorganized Debtors with written notice of the alleged default. The Reorganized Debtors have 30 days from receipt of written notice to cure the alleged default.

16.3.   Compliance with tax requirements. In connection with this Plan, the Reorganized Debtors will comply with any withholding and reporting requirements imposed by federal, state, and local taxing authorities, and distributions will be subject to the withholding and reporting requirements.

16.4.   Modification or revocation of this Plan.

16.4.1. *Generally.* Subject to the restrictions on plan modifications set forth in § 1193 of the Code, the Debtors and the Reorganized Debtors, as applicable, all reserve the right to alter, amend, withdraw or modify the Plan.

16.4.2. *With Consent.* Notwithstanding anything herein to the contrary, after the Effective Date and substantial confirmation of the Plan, the

Reorganized Debtors may modify the treatment provided under this Plan to any lass of claims or interests, provided that the Holders of claims or interests in such Class approve the modification in a writing sent to all Holders of claims or interests in such Class that sets forth the proposed modification (the "Modification Notice"). The Reorganized Debtors shall have obtained consent to a proposed Plan modification if a majority of Holders of the claims or interests in each affected Class approve the modification in writing and such majority accounts for more than 66% of the value of the claims in the affected Class or Classes.

16.4.3. *Ancillary documents*. Notwithstanding any reference herein to documents in any forms annexed to this Plan, and without limiting the preceding paragraph, the Debtors may revise those forms by filing such revised forms with the Court on or prior to the date the Plan is confirmed.

16.5.   Effect of withdrawal or revocation of the Plan. If the Debtors revoke or withdraws this Plan before the date the Plan is confirmed, or if the Plan is not confirmed or the Effective Date does not occur, then this Plan will be null and void. In such event, nothing contained in this Plan will be deemed to constitute a waiver or release of any claims by or against the Debtors or any other person, or to prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors.

16.6.   Due authorization. Each and every Holder of an allowed claim who elects to participate in the distributions provided for in this Plan warrants that it is authorized to accept the distributions provided for in this Plan in consideration of such claim or interest and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by it under this Plan.

16.7.   Implementation. The Debtors and Reorganized Debtors will be authorized and directed to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of this Plan.

16.8.   Term of injunctions or stays. All injunctions or stays provided for in the Case under §§ 105 or 362 of the Code or otherwise, and extant on the date the Plan is confirmed (excluding any injunctions or stays contained in this Plan or the confirmation order), will remain in full force and effect until the Effective Date unless otherwise provided herein or in the confirmation order.

16.9.   Integration clause. This Plan constitutes a complete, whole, and integrated statement of the binding agreement among the Debtor, each of the Holders of claims or interests, their respective successors and assigns, and other

parties in interest upon the matters herein. Parol evidence shall not be admissible in an action regarding this Plan or any of its provisions.

16.10. Headings. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the meanings of this Plan.

16.11. Severability of Plan provisions. If any term or provision of this Plan is held by the Court to be invalid, void, or unenforceable before the date the plan is confirmed, the Court, at the request of the Debtor, will have the power to alter and interpret the term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and the term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by the holding, alteration, or interpretation. The confirmation order will constitute a judicial determination and will provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

16.12. Governing law. Unless a rule of law or procedure is supplied by federal law (including the Code and the Bankruptcy Rules), the laws of the State of Illinois govern the construction and implementation of this Plan and any agreements, documents, and instruments executed in connection with this Plan, and any corporate governance matters and causes of action arising under state law with respect to the Debtor, without giving effect to the principles of conflicts of law thereto.

16.13. Computation of time periods. If any deadline established pursuant to this Plan falls on a Saturday, Sunday or Federal holiday, the deadline shall be automatically extended to the following business day without further order of the Bankruptcy Court. The provisions of Bankruptcy Rule 9006(a) otherwise govern the computation of any applicable time period under this Plan.

v

Dated: April 20, 2026

Respectfully submitted,
**Anatoly Gershengorin and Isabella Gershengorin,**

By: /s/ Justin R. Storer
One of Their Attorneys

Justin R. Storer (ARDC 6293889)
**FACTORLAW**
105 W. Madison, Suite 2300
Chicago, IL 60602
Tel:      (312) 373-7226
Fax:      (847) 574-8233
Email:  jstorer@wfactorlaw.com

# EXHIBIT A

## LIQUIDATION ANALYSIS

*Overview and purposes:*

The "best interests of creditors" test is set forth in section 1129(a)(7) of the Bankruptcy Code, and the Bankruptcy Court may not confirm a plan of liquidation unless the plan provides each holder of a claim or interest who does not otherwise accept the plan with property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the Debtors' estates were liquidated under chapter 7 of the Bankruptcy Code. Accordingly, to demonstrate that the Plan satisfies the "best interests of creditors" test, the Debtors have prepared a hypothetical liquidation analysis (this "Liquidation Analysis") presenting recoveries available assuming a hypothetical liquidation if this case were converted to chapter 7 of the Bankruptcy Code on June 1, 2026 (see, e.g., 11 U.S.C. § 1129(a)(7)(A)(ii), "if the debtor were liquidated under chapter 7 of this title on [the effective date of the plan]".

The cash balance in the Debtor's accounts varies, but this liquidation analysis assumes it to be $37,389.17, the amount on hand as of the end of the February 28, 2026 monthly operating report period.

As the Debtors itemize the "Refund from chapter 13 Trustee," they deduct $15,000.00 of its value aggregate value, to estimate their attorney's administrative expense claim.

The Debtors believe that their estimated distribution to creditors in a chapter 7 case is assuredly overly generous – they are not able to estimate the estate's capital gains tax liability (for the hypothetical sale of their home), or the estate's income tax liability in any event, and so value those necessary claims at zero.

The Liquidation Analysis presents information based on, among other things, the Debtors' books and records and good-faith estimates regarding asset recoveries and claims resulting from a hypothetical liquidation undertaken under chapter 7 of the Bankruptcy Code. This Liquidation Analysis includes a good-faith estimate owed by the chapter 7 estate, and the Debtors, for capital gains taxes on appreciated assets. Although the Debtors consider the estimates and assumptions set forth herein to be reasonable under the circumstances, such estimates and assumptions are inherently subject to significant uncertainties and contingencies beyond Debtors' control. As a result, there can be no assurance that the results set forth by the Liquidation

Analysis would be realized if Debtors were actually liquidated, and actual results in such a case could vary materially from those presented herein, and distributions available to members of applicable classes of claims could differ materially from the balances set forth by this Liquidation Analysis in such instance.

**THE LIQUIDATION ANALYSIS IS A HYPOTHETICAL EXERCISE THAT HAS BEEN PREPARED FOR THE SOLE PURPOSE OF PRESENTING A REASONABLE, GOOD-FAITH ESTIMATE OF THE PROCEEDS THAT WOULD BE REALIZED IF THE DEBTORS' ESTATES WERE LIQUIDATED IN ACCORDANCE WITH CHAPTER 7 OF THE BANKRUPTCY CODE. THE LIQUIDATION ANALYSIS IS NOT INTENDED TO AND SHOULD NOT BE USED FOR ANY OTHER PURPOSE. THERE MAY BE A SIGNIFICANT DIFFERENCE BETWEEN THE LIQUIDATION ANALYSIS AND THE VALUES THAT MAY BE REALIZED, OR MONIES GENERATED IN AN ACTUAL LIQUIDATION.**

*Hypothetical chapter 7:*

| *Asset of significance:* | *Estimated realization:* |
|---|---|
| 5 Pine Tree Road, Northbrook | $815,000, less 8% costs of sale ($65,200), less exemptions ($30,000), less approximate payoff on mortgage ($495,000) leaving **$224,800.00**. |
| Cash on hand | **$37,389.17** |
| Refund from chapter 13 Trustee | **$35,700.00** |
| Total available for distribution: | **$297,889.17** |

| | |
|---|---|
| Chapter 7 Trustee's 326 commission on $858,089.17 (all money realized by chapter 7 Trustee, including gross sales price on house, minus the $30,000.00 exemption disbursed to Debtors): | **$46,154.46** |
| Estimated administrative costs not reflected above (e.g., Trustee's general bankruptcy counsel, accountant): | **$10,000.00** |
| Total administrative expenses: | **$56,154.46** |

Total available for distribution minus administrative expenses equals estimated distribution to allowed claims in hypothetical chapter 7:

<mark>**$241,734.71**</mark>

*Funds committed by chapter 11 plan:*

60 monthly payments of $4,050.00

**TOTAL COMMITTED:**                    <mark>**$243,000.00**</mark>

# EXHIBIT B

## PROJECTED FINANCIAL INFORMATION

*See attached schedules I and J:*